UNITED STATES, Appellant

v

MELVIN V. STIVERS, Radarman Third Class,
U. S. Navy, Appellee

11 USCMA 512, 29 CMR 328

No. 13,932

Decided June 3, 1960

Commander *Louis L. Milano* argued the cause for Appellant, United States.

Commander *David Bolton* argued the cause for Appellee, Accused.

Opinion of the Court

ḤOMER FERGUSON, Judge:

The accused was found guilty of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for three years, and reduction to the lowest enlisted grade. Approving the findings, the convening authority reduced the sentence to bad-conduct discharge, forfeiture of all pay and allowances, reduction to the lowest enlisted grade, and confinement at hard labor for eighteen months. Concluding that a confession obtained in violation of Code, supra, · Article 31, 10 USC § 831, had erroneously been admitted in evidence, a divided board of review set aside the findings and ordered a rehearing. The Judge Advocate General of the Navy certified to this Court the question whether the law officer erred in admitting accused's confession in evidence.

Each member of the board of review wrote a separate exposition of his views in the case under consideration. The principal opinion of Member O'Bannon and the concurring opinion of Member Cappelmann leave us in doubt concerning whether they determined accused's confession to be involuntary as a matter of fact or as a matter of law. If their decision was factual, it may not be reviewed in this Court. United States v Wheatley, 10

512

USCMA 537, 28 CMR 103. If the board determined that involuntariness existed as a matter of law, the propriety of its decision is properly before us. As we are uncertain concerning the basis on which the majority's conclusion rested, we return the record of trial to The Judge Advocate General of the Navy for reference to the board of review in order that the matter may be clarified. United States v Moreno, 5 USCMA 500, 18 CMR 124; United States v Judd, 10 USCMA 113, 27 CMR 187.

It is so ordered.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

In cases which reverse rulings involving mixed questions of law and fact, it is ofttimes difficult to ascertain whether a board of review is exercising fact-finding powers or relying solely on legal hypotheses. But in this case, even if it be conceded that the reversal is predicated on a factual determination, the result is in direct conflict with our holding in United States v Colbert, 2 USCMA 3, 6 CMR 3, and should not be permitted to stand. This for the reason that the record is devoid of any evidence to support a finding that the confession was the product, in whole or in part, of a violation of Article 31, Uniform Code of Military Justice, 10 USC § 831. A short reference to the facts shedding light on the problem should prove the point.

The accused, who was not in confinement, was being interrogated by an agent of the Office of Naval Intelligence, and he denied any complicity in the offense. Prior to being interrogated, he was warned of his rights under Article 31 of the Code, and during the interview, which was something less than two hours, the agent was courteous and friendly. He offered no improper benefits or inducements and no threats were uttered or harm suggested. Because of accused's denial, the investigator, after discussing the problem with accused's division officer, who was present with accused's consent, concluded to put the accused under oath before asking him any further questions. He thereupon had the accused take an oath to tell the truth and informed him that if he gave false answers he could be subjected to prosecution for perjury or false swearing. However, before proceeding with any further interrogation, the agent repeated the terms of Article 31 and informed the accused that he need not answer any question but, if he did, his answers could be used against him in a trial by court-martial. The accused then concluded to make a statement, and he orally admitted taking the money. After having eased his conscience he accompanied the agent to lunch, and thereafter the confession was reduced to writing and, prior to signature, a third warning was given to the accused. Nevertheless, he signed the document admitting his guilt.

The accused took the witness stand for the purpose of showing his confession was involuntary, and his testimony varied little from the evidence produced by the Government. The only area of testimonial difference was the accused's claim that the oath, plus the statement about perjury, coerced him to confess. The law officer admitted the statement, but in his final instruction to the court he specifically informed the members that if they believed any act or conduct on the part of the investigator caused the accused to believe he did not have the right to refuse to make any statement, they must consider the confession involuntary. While this might indicate the law officer concluded there was an issue of inadequate warning raised, it might also be a cautious effort on his part to give the accused the benefit of his only theory of defense.

The board of review split three ways in resolving the issue, but for present purposes, I believe it fair to state that a majority of the board concluded coercion was shown only because the accused was placed in a position of either not talking or telling the truth. No doubt that was his choice, but to support the board's theory it must be assumed that the accused had a privilege to lie, and the blocking of that advantage constituted coercion. I believe that reasoning to be erroneous, for placing a person under oath is not nor-

mally a command to talk but an admonition to tell the truth when and if he does speak. There are several exclusionary grounds mentioned in Article 31, but in this instance we can exclude all but coercion of some limited form, for it is conceded that accused was warned properly and that he was well aware of his right to remain silent. Furthermore, there was no extended interrogation, no hardships imposed on the accused, no threats uttered and no illegal promises or inducements offered. Accordingly, as a majority of the board concluded, coercion must be found in the administration of the oath or not at all.

In United States v Colbert, supra, we were confronted with a similar situation. One member of the board sought to distinguish that case from this on certain factual differences. However, I believe he overlooked the fact that in that case we accepted the testimony of the accused and he asserted he was impelled to confess because he was informed that if he continued to deny his complicity in the offense and he was later convicted, he could be later tried for perjury. In the case at bar, accused asserts that the subject of perjury came up but not in the same threatening manner. However, fear of the consequences of falsities worked on the minds of both accused. To illustrate the way in which that subject arose in the case at bar, I quote accused's testimony on cross-examination:

"Q. Then, when he called Mr. Garrison in, isn't it true that with Mr. Garrison present, Mr. Wilkinson explained to you again, referring to the previous explanation he had given, that he explained again to you that you had—you still had your rights under Article 31 as they had been previously explained, and you still didn't have to make any statement, isn't that right?

"A. My recollection, yes sir.

"Q. This was after Mr. Garrison came in, isn't that right?

"A. Yes, sir.

"Q. And then he put you under oath?

"A. Yes, sir.

"Q. And he told you that you could be charged with perjury if you made a statement that was false, isn't that right?

"A. Yes, sir.

"Q. So he told you you didn't have to make a statement, but you could be charged with perjury if you made one that was false, and told you all this while Mr. Garrison was present?

"A. Yes, sir."

It can be argued that the giving of an oath was not assigned as an influential factor in the Colbert decision, but that act to be coercive must be performed in such a manner as to deny the accused his freedom of choice in talking or not talking. Obviously, if an accused is led to believe that the oath denies him his right or privilege to remain silent, then his statement would be inadmissible because of inadequate warning and compulsion. We have repeatedly held that when an agent by his acts, conduct or statements neutralizes the warning previously given, the evidence subsequently acquired is inadmissible. I would follow that rule in this case if it did not appear so clearly that the accused was informed that the administration of the oath did not take away any of the privileges granted to him by Article 31 and that he need not answer any question propounded. Accordingly, he was neither inadequately advised nor directly or indirectly compelled to speak. While the technique employed is a stratagem, it is not illegal and, if the suspect is informed after the oath is given that he may remain silent, I fail to see how it denies him his choice between audibility and silence. If an accused speaks only because he fears to remain silent, he is not coerced. That to me is an exercise of his right of free choice and not a compelled act.

At the risk of being repetitious, I restate my differences with the board of review in this matter. The real issue, as I view it, is whether the accused understood his right to remain silent. That must be decided before voluntariness is reached. If he knew his right, his statement was not involuntary unless some other form of coercion was used. By way of illustration, a suspect may know his rights

but physical torture may cause him to confess as the force applied may be too great to bear. In that situation, the confession and the giving up of the rights are required by the pressure applied. However, in the case at bar, the accused knew his rights and the most that can be said is that the pressure to yield them, if any, arose solely from a fear of silence. That sort of compulsion comes from within the accused and finds its roots in conscience, but that does not mean the accused is denied his right of free choice by a third party who is subject to the Code. Neither does it mean the accused is compelled to speak within the meaning of Article 31 of the Code. What I believe it does mean is that a calculated choice to "come clean" is exercised by an accused who prefers that course to one of being haunted by his own silence.

I would reverse the decision of the board of review.